807 A.2d 113

**James MUSE,**

v.

**STATE of Maryland.**

**No. 1354, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 9, 2002.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before GREENE, SHARER, and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned) JJ.

SHARER, Judge.

James Muse was convicted, after a bench trial on an agreed statement of facts in the Circuit Court for Baltimore County, on a single charge of possession with intent to distribute cocaine. Muse's conviction drew a sentence of ten years as a repeat offender, without the possibility of parole, and he appeals the judgment of conviction.

Muse asks this Court[1] to review his conviction by determining whether the trial court was wrong in (1) denying his motion to suppress and (2) accepting a jury trial waiver without a sufficient examination of him on the record as required by Maryland Rule 4–246(b).[2] We view this appeal as

---

1. Affectionately referred to by the trial judge as "the sages of Rowe Boulevard."

2. Appellant withdrew this issue by notice filed with this Court on June 26, 2002, stating: "Pursuant to Md. Rule 8 601, Appellant, James Muse, hereby withdraws Issue II (the jury trial waiver issue) from Appellant's

presenting an issue of first impression in Maryland, as we have not found a case in which the stated reasonable suspicion for an automobile stop was a cracked windshield, and that the stop was challenged as a result.[3]

## Procedural Background

Appellant was arrested on December 21, 2000, charged with traffic offenses, and was also accused of possession of cocaine and possession of cocaine with intent to distribute. On February 28, 2001, the State's Attorney for Baltimore County filed a five-count criminal information charging appellant with possession of cocaine, possession of cocaine with intent to distribute, and three violations of the Transportation Article.[4] On August 29, 2001, this matter went to a hearing on appellant's motion to suppress. After the circuit court denied his motion to suppress, Appellant opted to stand trial on a "not guilty, agreed statement of facts" basis. He was found guilty of possession with intent to distribute cocaine. The State en-

---

Brief. Appellant wishes to proceed with this appeal only as to Issue I (the suppression issue)."

**3.** In *Powell v. Appleby*, 941 F.Supp. 52 (D.Md.1996), the operator of an automobile that had been stopped for a cracked windshield brought a civil action against a Maryland State Police trooper, asserting that the trooper violated his rights under the Fourth, Sixth and Fourteenth Amendments in connection with the traffic stop and resulting search. The trooper had stopped plaintiff's automobile on Interstate 95 after noticing that the car's windshield was cracked. The plaintiff conceded the damage, and likewise acknowledged that this condition would constitute a traffic violation. 941 F.Supp. at 53. His complaint was that the trooper, who was parked by the side of the Interstate when the plaintiff's car drove by, could not have seen the cracked windshield, and thus stopped him on a pretext. In entering summary judgment for the trooper on the plaintiff's claim as to the legitimacy of the stop, the district court explained that the "undisputed existence of the cracked windshield forecloses any argument as to the legitimacy of the stop[.]" *Id.*

That case does not squarely address the issue *sub judice;* however, no party in that case challenged the general right of the trooper to stop a vehicle for a cracked windshield.

**4.** Those were driving with a suspended license and failures to display registration and license.

tered a *nol pros* on the four remaining counts. This timely appeal followed.

### Facts

On December 21, 2000, Baltimore County Officer Robert Bouder was on a routine patrol on Old Eastern Avenue in Baltimore County. At 7:50 a.m., he happened to be following the blue, four-door Nissan sedan that was being operated by appellant. Officer Bouder did not know appellant, and there was nothing in the way appellant was operating his vehicle that was suspicious. As Officer Bouder closed to within two car lengths, and perhaps as close as 15 feet,[5] he noticed a crack "going on one side of the windshield to the other side of this windshield" of appellant's auto. This observation prompted Officer Bouder to initiate a traffic stop, the results of which confirmed his observation about the windshield. The crack reached "[p]robably 24 plus inches." Looking at the windshield of the car in front of him, Officer Bouder said that he "couldn't miss it. It is cracked across the front of the windshield. I'm looking at the car that's in front of me." The crack was in the middle of the windshield.

Officer Bouder asked the driver, who was appellant Muse, for his license and registration, intending to issue an equipment repair order. Appellant failed to provide either document, and Officer Bouder initiated a record check with the Motor Vehicle Administration. As a result of this inquiry, he learned that appellant's license had been suspended, and that he had failed to appear for a matter in district court. Bouder then arrested appellant,[6] and in a search incident to the arrest he discovered "two vials of an off-white powder substance" in appellant's left breast pocket. Appellant was transported to the precinct station, where a body cavity search yielded 24 small bags of an "off-white chunk substance." The suspected

---

5. Officer Bouder conceded that he may not have been following appellant's automobile by a safe distance.

6. He also maintained that he issued traffic citations, but could not recall whether he in fact issued a repair order.

contraband was forwarded for chemical analysis, where it was confirmed to be cocaine measuring 4.5 grams.

Immediately following the motions hearing, the parties proceeded on the agreed statement of facts, with the State relying on Officer Bouder's testimony without objection and a summary of the findings of the police chemist. The trial court entered a verdict of guilty, ruling that the agreed statement was sufficient to satisfy the State's burden of proof.

### Discussion

Appellant assails the circuit court's refusal to suppress the cocaine that was seized from appellant's car after the traffic stop. He specifically contends that the record does not support a finding, which the trial court did not attempt to make in any event, that Officer Bouder had a reasonable suspicion to believe that appellant was driving with improper or unsafe equipment.

Appellant places considerable weight on the State's failure to point to any provision in the Code which specifically addresses a "cracked windshield," and avers that, "assuming that [equipment standards set forth in the Transportation Article] apply, the State failed to prove that [his] windshield 'apparently does not meet the [the Code's] standards[.]'" As explained below, we disagree with the suggestion that Officer Bouder lacked an objectively reasonable basis to stop appellant in order to investigate the damaged windshield.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const., amend. IV. The central requirement of this amendment [7] is that searches and seizures be

---

7. The protections of the Fourth Amendment are applicable to the States by virtue of the Fourteenth Amendment, see *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its provisions are construed *in pari materia* with those of Article 26 of the Maryland Declaration of Rights. See *Scott v. State*, 366 Md. 121, 139, 782 A.2d 862 (2001). Constructions of the federal amendment by the United

"reasonable[,]" *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000); see *Brinegar v. United States,* 338 U.S. 160, 164 n. 4, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and its "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).

Ordinarily, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur,* 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (quoting *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). But "a police officer may stop and briefly detain a person for investigative purposes if the officer has [a] reasonable suspicion, supported by articulable facts, that criminal activity 'may be afoot.' " *In re David S.,* 367 Md. 523, 532, 789 A.2d 607 (2000) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An officer may stop an automobile if he is " 'able to point to specific and articulable facts which, taken together with rational inferences [therefrom] reasonably warrant that intrusion.' " *Cartnail v. State,* 359 Md. 272, 284, 753 A.2d 519 (2000) (quoting *Ferris v. State,* 355 Md. 356, 384, 735 A.2d 491 (1999)).

In *Williams v. State,* 19 Md.App. 204, 310 A.2d 593 (1973), this Court noted that "an occupant of an automobile is just as subject to a reasonable 'stop' and to a reasonable 'frisk' as is a pedestrian." *Id.* at 210, 310 A.2d 593 (citing *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Thus, if an officer has a reasonable suspicion of criminal activity, he may make a brief investigatory stop of a vehicle, and his conduct in doing so will be gauged by the lesser justification sanctioned by *Terry* and its progeny, provided the

States Supreme Court are controlling authority. See generally *Arkansas v. Sullivan,* 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001).

totality of the circumstances supports that reasonable suspicion. Moreover, if a police officer observes the commission of a traffic violation, the *Terry* analysis would not come into play because that officer would have the requisite probable cause to stop the automobile and would not need to rely on *Terry* to justify his action. See *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (decision to stop automobile reasonable where police have probable cause of occurrence of traffic violation).

We turn to the case at hand, and we begin by articulating the appropriate standard of review. Our review of the trial court's denial of the appellant's motion to suppress under the Fourth Amendment is confined exclusively to the record of the suppression hearing. *In re David S.,* 367 Md. at 529, 789 A.2d 607; *State v. Fernon,* 133 Md.App. 41, 43–44, 754 A.2d 463 (2000). We review the trial judge's findings of historical fact for clear error. *State v. Funkhouser,* 140 Md.App. 696, 703, 782 A.2d 387 (2001). Given our deferential scrutiny, we accept those facts found by the trial court in the light most favorable to the prevailing party, in this case the State, *id.,* and otherwise will consider only those facts that are " 'most favorable to the State as the prevailing party on the motion' " where findings have not been rendered below. *Dixon v. State,* 133 Md.App. 654, 668, 758 A.2d 1063, *cert. denied,* 362 Md. 36, 762 A.2d 969 (2000)(quoting *Matthews v. State,* 106 Md.App. 725, 732, 666 A.2d 912 (1995), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996)).

We exercise plenary review of the suppression court's conclusions of law, *Ferris, supra,* 355 Md. at 368, 735 A.2d 491, engaging in this *de novo* review of mixed questions of law and fact we conduct an independent constitutional appraisal by reviewing the law and applying it to the established facts to determine the validity of a search and resultant seizure. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Fernon, supra,* 133 Md.App. at 44, 754 A.2d 463.

As we have noted, we have discovered no Maryland case dealing with the question of whether the observation, by a police officer, of the operation of a motor vehicle, the windshield of which is cracked or otherwise damaged, affords the requisite reasonable suspicion, absent some other violation, to stop that vehicle to make further inquiry. The question has, however, been raised and litigated in other jurisdictions.

In *State v. Vera,* 196 Ariz. 342, 996 P.2d 1246 (App.1999), a police officer stopped an auto being operated by Vera because he observed that the windshield was cracked. There was no other reason to effect the stop. Ultimately, of course, contraband was found and Vera was appropriately charged. There was no Arizona statute that specifically prohibited the operation of a vehicle with a cracked or damaged windshield, but Arizona law did require that passenger vehicles be equipped with an "adequate windshield." Reversing the trial court's order of suppression, the Court of Appeals of Arizona held that "[w]hether the windshield of a motorist's automobile is 'adequate' is first investigated by a police officer and next determined by a fact finder if the officer issues a citation...." *Id.* at 1247. "The officer was not required to determine the adequacy of the windshield before he stopped [the] automobile to investigate the obviously cracked windshield." *Id.* at 1247–48.

A denial of a motion to suppress was affirmed by the U.S. Court of Appeals for the 10th Circuit in *United States v. Alvarez–Becerra,* 33 Fed.Appx. 403 (10th Cir.2002). There, the court found reasonable articulable suspicion to stop a vehicle on the basis that a crack in the windshield made the vehicle dangerous to drive. Likewise, in *United States v. Callarman,* 273 F.3d 1284 (10th Cir.2001), a traffic stop was sustained where the officer had reasonable articulable suspicion that a crack in the windshield obstructed the operator's field of vision.

Other courts have taken up the "cracked windshield" predicate for a traffic stop and have found that such defect justifies further investigation. See *United States v. Cashman,* 216

F.3d 582 (7th Cir.2000) (cracked windshield provided probable cause for a stop even if the crack was not large enough to violate the law); *United States v. Davis*, 905 F.Supp. 16 (D.C.1995) (a reasonable officer could stop a vehicle if the crack in the windshield could reasonably be seen); *People v. Jones*, 207 Ill.App.3d 30, 151 Ill.Dec. 969, 565 N.E.2d 240 (1990) (cracked windshield was sufficient to justify stop as not pretextual where it was a violation to operate a vehicle with an impaired windshield). See also *State v. Tomaino*, 627 N.W.2d 338 (Minn.Ct.App.2001); *State v. Repp*, 2001 Ohio 7034, 2001 WL 1674100 (Ohio Ct.App.2001).

We conclude that Officer Bouder was entitled to stop appellant's vehicle to investigate the crack in his windshield and for the purpose of writing an equipment repair order. Maryland Code (1977 and 1999 Repl.Vol.), § 22–101 of the Transportation Article, which prohibits driving "with improper equipment," reads in part:

(a) *In general.*—(1) A person may not drive and the owner may not cause or knowingly permit to be driven on any highway any vehicle or combination of vehicles that:

(i) Is in such unsafe condition as to endanger any person[.]

Appellant concedes that "a cracked windshield *could* render a vehicle unsafe to drive." Having thus observed the cracked windshield, an officer could reasonably be concerned that the crack rendered the vehicle "unsafe," and that sighting this phenomenon compelled further investigation. Officer Bouder's initial stop of appellant was objectively reasonable.[8]

---

8. Appellant does not deny the presence of a crack, but adverts to a "factual dispute" about its length. This argument is without merit for two reasons. First, for purposes of addressing the propriety of the motions court's ruling, "we treat [appellant's] testimony as if it had never been given" because the State prevailed on the motion. *Charity v. State*, 132 Md.App. 598, 606, 753 A.2d 556, *cert. denied*, 360 Md. 487, 759 A.2d 231 (2000). Second, appellant was tried on an Agreed Statement of Facts, and his counsel did not object when the State incorporated by reference Officer Bouder's suppression hearing testimony.

■ We emphasize that the officer was not required to establish to his satisfaction, prior to the stop, that the windshield called into question the safety of the vehicle. Contrary to appellant's assertion that the State has "failed to prove" that his windshield was in violation of Section 22–101 or any other applicable equipment provision either in the Code or COMAR,[9] we likewise hasten to note that the State has no such burden of proving a violation to justify an officer's action at the *initial investigatory stage*. As we stated in *Carter v. State,* 143 Md.App. 670, 795 A.2d 790 (2002), "[t]he fundamental purpose of a *Terry*-stop, based as it is on reasonable suspicion, *is to confirm or to dispel* that suspicion by asking for an explanation of the suspicious behavior." *Id.* at 683–84, 795 A.2d 790 (emphasis added).

Exercising *de novo* review of the facts of this case, we are satisfied that Officer Bouder's stop of appellant's automobile to investigate the windshield, and his request for appellant's driver's license and automobile registration as part of the limited traffic stop, were reasonable. The trial court did not err in denying appellant's motion to suppress.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

9. For example, under State Police automobile certification regulations, an automobile would not be certified if the driver's side windshield contained, *inter alia*, "any one crack, ... or any combination of individual cracks, nicks, pits, chips ... which cumulatively exceed ¼ inch diameter or length[.]" COMAR 29.02.01.11(C)(2).