75 A.3d 1048

**Marlon SMITH**

v.

**STATE of Maryland.**

**No. 1295, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 10, 2013.

196

Daniel Kobrin (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Benjamin A. Harris (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, BERGER and IRMA S. RAKER (Retired, Specially Assigned), JJ.

RAKER, J.

Marlon Smith, appellant, was convicted in the Circuit Court for Baltimore City of possession of a regulated firearm after being convicted of a disqualifying crime, wearing, carrying, or transporting a handgun and wearing, carrying, or transporting a handgun in a vehicle. Appellant presents one issue for our

review: whether the court erroneously denied his motion to suppress evidence recovered from the search of a vehicle pursuant to a traffic stop. We shall affirm.

## I.

Appellant was indicted by the Grand Jury for the Circuit Court for Baltimore City, with possession of a regulated firearm after being convicted of a disqualifying crime, wearing, carrying, or transporting a handgun, and wearing, carrying, or transporting a handgun in a vehicle. Before that court, appellant moved pre-trial to suppress a firearm that was recovered from a vehicle in which he was a passenger,[1] arguing that police conducted an unlawful traffic stop without reasonable articulable suspicion or probable cause. The following evidence was presented at the motions hearing.

On November 30, 2011, Detective Kenneth Ramberg observed appellant walking along the 1600 to 1700 block of Darley Avenue. After a few minutes of watching appellant engage in non-criminal behavior, Detective Ramberg saw appellant get into the passenger seat of a vehicle. As the car drove away, the Detective noticed that the vehicle's "rear deck [brake] light" did not illuminate upon application of the brakes. The vehicle's other two rear brake lights were functioning properly. Consequently, Detective Ramberg initiated a traffic stop "[t]o inform the [driver] that the light was out, and to issue a safety equipment repair order." Appellant was seated in the passenger seat.

Once he approached the car, Detective Ramberg smelled an odor of burnt marijuana emanating from the vehicle. Officers asked appellant and the driver to exit the vehicle. With both of the occupants out of the car and seated on the curb, Detective Ramberg went to close the passenger door. At that point, he saw a handgun lying in open view on the passenger

---

1. Appellant moved also to suppress statements he made at the scene of the traffic stop and police station. The court denied the motion. Appellant does not argue on appeal that the court erred in denying his motion to suppress the statements he made to police.

floorboard. The officers arrested appellant and the driver. Although neither individual initially claimed ownership of the handgun, appellant conceded later that the handgun did not belong to the driver.

Appellant moved to suppress the handgun recovered from the search of the vehicle. He argued that the traffic stop was unlawful because it was not supported by reasonable articulable suspicion or probable cause. Appellant maintained that a malfunctioning rear deck brake light is not a violation of the Transportation Article of the Maryland Code so long as the vehicle has at least two functioning rear brake lights.[2] The court denied the motion, determining that the Transportation Article entitles a police officer to stop a vehicle and issue a equipment repair order if any brake light is inoperable.

The case proceeded to trial before a jury in the Circuit Court for Baltimore City. The jury convicted appellant of possession of a firearm after being convicted of a disqualifying crime, wearing, carrying, or transporting a handgun, and wearing, carrying, or transporting a handgun in a vehicle. The court sentenced appellant to a term of incarceration of five years for possession of a regulated firearm, three years for wearing, carrying, or transporting a handgun, and three years for wearing, carrying, or transporting a handgun in a vehicle. This timely appeal followed.

## II.

Before this Court, appellant argues that the trial court erroneously denied his motion to suppress the handgun because it was recovered pursuant to an unlawful traffic stop. Specifically, appellant argues that driving a vehicle with a malfunctioning brake light is not a violation of the Transportation Article of the Maryland Code so long as at least two brake lights are functioning properly. As such, appellant argues, Detective Ramberg initiated a traffic stop based on no

_____

2. Both parties agree that the vehicle in question had at least two functioning brake lights.

violation of the law, which, in Maryland, cannot support a detention for a traffic violation even if the officer acted reasonably in believing that a violation had occurred.

The State maintains that the court properly denied appellant's motion to suppress. The State contends that Detective Ramberg initiated a lawful traffic stop to issue an equipment repair order for a malfunctioning brake light. The State disagrees with appellant's interpretation of the Transportation Article and maintains that police may initiate a traffic stop to issue a repair order for any malfunctioning brake light. Thus, the State argues that the traffic stop was predicated on an actual violation of the Maryland Vehicle Laws.

## III.

Appellant's only contention on appeal is that the court erroneously denied his motion to suppress the handgun recovered from a search of the vehicle. When reviewing a ruling on a motion to suppress evidence, this Court ordinarily considers only the evidence in the suppression hearing record. *See Herring v. State*, 198 Md.App. 60, 67–68, 16 A.3d 246, 249–50 (2011). We defer to the hearing court's factual findings unless they are clearly erroneous and review the facts in the light most favorable to the prevailing party, here, the State. *Id.* at 71–72, 16 A.3d at 253. Ultimately, however, this Court determines independently whether a constitutional violation occurred through review of the law and application of the law to the specific facts. *Id.* at 72, 16 A.3d at 253.

Appellant contends that police recovered the handgun from the vehicle pursuant to an unlawful traffic stop in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment to the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affir-

mation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourth Amendment, made applicable against the States through the Fourteenth Amendment, guarantees the right of the people against only *unreasonable* searches and seizures. *See Williamson v. State,* 398 Md. 489, 501–02, 921 A.2d 221, 228–29 (2007) (quoting *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).

A police-initiated traffic stop constitutes a seizure within the confines of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). To be reasonable, a traffic stop must be supported by "reasonable articulable suspicion to believe that the car [was] being driven contrary to the laws governing the operation of motor vehicles." *Lewis v. State,* 398 Md. 349, 362, 920 A.2d 1080, 1087 (2007). The subjective motivations of the officer for conducting a traffic stop are irrelevant to determine whether the stop is constitutionally reasonable. *Whren,* 517 U.S. at 812–13, 116 S.Ct. 1769. This Court has held that a police officer's mistaken, yet reasonable, belief that a traffic violation has occurred is not sufficient to establish reasonable articulable suspicion. *See Gilmore v. State,* 204 Md.App. 556, 571–72, 577, 42 A.3d 123, 131–32, 135 (2012). In other words:

"It makes no difference that an officer holds an understandable or 'good faith' belief that a law has been broken. Whether the officer's conduct was reasonable under the circumstances is not the proper inquiry.... A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable."

*Gilmore,* 204 Md.App. at 572, 42 A.3d at 132 (quoting *United States v. McDonald,* 453 F.3d 958, 961 (7th Cir.2006)). Accordingly, the State must establish an actual violation of the Maryland Vehicle Laws in order to effectuate a stop predicated on a traffic violation to be consistent with the Fourth Amendment. *See Ray v. State,* 206 Md.App. 309, 329, 47 A.3d 1113, 1124 (2012).

■ Maryland Code (2002, 2012 Repl. Vol.) § 23–105 of the Transportation Article [3] provides for the issuance of a safety equipment repair order for defective equipment on motor vehicles. Section 23–105(a)(1) states as follows:

"[I]f a police officer observes that a vehicle registered in this State is being operated with any equipment that apparently does not meet the standards established under this subtitle . . . the officer shall stop the driver of the vehicle and issue to him a safety equipment repair order."

Section 23–104, promulgated under the same subtitle as § 23–105, establishes the minimum standards for equipment on motor vehicles. Section 23–104(a) requires every vehicle driven in this State to have lights "meeting or exceeding the standards established jointly by the [Motor Vehicle Administration] and the [Automotive Safety Enforcement Division of the Department of State Police]." The Motor Vehicle Administration ("MVA") has the express authority under § 23–104(b) to establish regulations that supplement the Transportation Article's minimum standards for equipment, including the regulation of brake lights.

Pursuant to its authority under the Transportation Article, the MVA requires at least three functioning brake lights on certain vehicles. The applicable MVA regulation instructs that vehicles manufactured on or after September 1, 1985,[4] shall have "a red high mounted [brake light]" in addition to two other brake lights on the rear of the vehicle. C.O.M.A.R. 11.14.02.10(iv). If any one of the three brake lights fails to illuminate, the vehicle fails inspection. *Id.* Accordingly, it follows that § 23–104(a) requires all vehicles manufactured on or after September 1, 1985 traveling in this State, to have at least three functioning brake lights. Law enforcement officers have the authority to stop and issue a safety equipment

---

3. All subsequent statutory references herein shall be to the Transportation Article unless otherwise indicated.

4. Neither party disputes that the vehicle involved in this case was manufactured on or after September 1, 1985.

repair order to any driver of a vehicle not meeting or exceeding this requirement pursuant to § 23–105(a).

In the case *sub judice,* Detective Ramberg stopped the vehicle for an inoperable brake light. It is undisputed that the rear deck brake light of the vehicle failed to illuminate upon an application of the brakes. Detective Ramberg observed the malfunctioning brake light and initiated a traffic stop "[t]o inform the [driver] that the light was out, and to issue a safety equipment repair order." Although the vehicle had two functioning rear brake lights, it did not meet or exceed the minimum standards for equipment established by the MVA, which requires at least three functioning brake lights. Therefore, the vehicle violated § 23–104(a), as supplemented by C.O.M.A.R. 11.14.02.10(iv), and, the driver of the vehicle was stopped lawfully and issued a safety equipment repair order pursuant to § 23–105(a).

Appellant argues, the MVA regulation notwithstanding, that the Transportation Article requires only two functioning brake lights. Section 22–206 requires every motor vehicle to be equipped with at least one brake light meeting the illumination requirements of § 22–219. Section 22–206 requires also vehicles registered in this State as a new vehicle after June 1, 1967 to be equipped with at least two brake lights.[5] Section 22–219(a), mandating the illumination of brake lights, states as follows:

"(a) *Stoplights.*—Any vehicle may be equipped with and, when required under the Maryland Vehicle Law, shall be equipped with a stop lamp or lamps on the rear of the vehicle, which:

(1) Shall display a red or amber light . . . ;

(2) Shall be actuated on application of the service (foot) brake; and

(3) May, but need not, be incorporated with one or more other rear lamps."

---

**5.** Neither party disputes that the vehicle in this case must be equipped with at least two brake lights.

Appellant interprets §§ 22–206 and 22–219(a) to mean that only two brake lights, and not any others, shall illuminate. We disagree with appellant.

Sections 22–206 and 22–219(a) require *at least* two functioning brake lights. This is not to say that additional brake lights are neither required nor required to illuminate. The MVA, pursuant to its express authority in §§ 23–104(a)–(b), expanded the required minimum number of functioning brake lights to three. *See* C.O.M.A.R. 11.14.02.10(iv). Therefore, an interpretation of the Transportation Article, as supplemented by the applicable MVA regulation, indicates that the vehicle in this case was required to have at least three functioning brake lights.

The Court of Appeals in *State v. Williams*, 401 Md. 676, 934 A.2d 38 (2007), followed closely the interpretation of the Transportation Article that we apply today. In *Williams*, an officer initiated a traffic stop of a vehicle that he believed exceeded the level of window tinting afforded by the Transportation Article as supplemented by a MVA inspection regulation. *See Williams*, 401 Md. at 691, 934 A.2d at 47. The Court indicated that, when applicable, consideration of a supplemental MVA regulation is required, together with the relevant statutory provisions, to determine whether a violation of the Maryland Vehicle Laws has occurred.[6] *See id.* at 683–85, 934 A.2d at 42–44 (stating that for vehicle tinting to be permissible it must meet the requirements of both the Transportation Article and the applicable MVA regulation). The Court explained further that pursuant to § 23–105, a police officer has reasonable articulable suspicion to stop a vehicle and issue a safety equipment order if the vehicle does not

---

**6.** It is important to note that the MVA tinting regulation in *Williams*, akin to the brake light regulation in the case *sub judice*, expanded the minimum requirements of the Transportation Article. *See State v. Williams*, 401 Md. 676, 684, 934 A.2d 38, 43 (2007) (noting that post-manufacture tinting is permissible if it complies with the Code, requiring 35% light transmittance, and, if the tinting meets the additional requirements of the MVA regulation including affixing a label stating the percentage of light transmittance, among other requirements not specifically mandated by the Transportation Article).

meet the requisite tinting parameters established by the Maryland Code and the MVA regulation. *See id.,* 934 A.2d at 42–44.

Appellant contends also that a traffic stop based solely on § 23–105 and a violation of a MVA regulation is constitutionally insufficient. He argues that Maryland Courts have been "loathe" to justify a traffic stop based solely on a violation of a regulation. He posits further that a lawful traffic stop must be predicated on "Code provisions that specifically address vehicular equipment or operation." Because we find that the traffic stop in this case was predicated on a violation of § 23–104(a), which addresses the "[m]inimum standards for equipment" on vehicles, we need not address whether a violation of a regulation, by itself, is sufficient to justify the stop. We note, however, that appellant hastens to suggest that driving a vehicle that violates solely a MVA regulation is insufficient to justify a traffic stop.[7] *See Williams,* 401 Md. at 692 n. 3, 934 A.2d at 48 n. 3 (noting that a violation of a MVA inspection regulation requiring a label on vehicles with post-manufacturing tinting, may "justify a citation under § 22–101 or § 23–105(a), a repair order, and some further investigation"); *see Turkes v. State,* 199 Md.App. 96, 115, 20 A.3d 173, 183 (2011) (same).

Moreover, assuming *arguendo* that the traffic violation in this case was predicated solely on the MVA regulation, the stop was justified nonetheless on the basis that the vehicle was driven in an unsafe condition. An officer is authorized to stop a vehicle that is being driven in an unsafe condition. *See* § 22–101(a)(1)(i); *see also* § 27–101(a). Section 22–101(a)(1)(i) states as follows:

"(a) In general.—(1) A person may not drive and the owner may not cause or knowingly permit to be driven on any highway any vehicle or combination of vehicles that:

---

7. It defies us also that a vehicle, which does not comply with a MVA regulation, shall fail inspection, but is nonetheless compliant with the Maryland Vehicle Laws.

(i) Is in such unsafe condition as to endanger any person[.]"

In *Muse v. State*, 146 Md.App. 395, 405, 807 A.2d 113, 118–19 (2002), we considered the applicability of § 22–101(a)(1)(i) to a traffic stop. In *Muse*, an officer stopped a driver of a vehicle that had a cracked windshield. *Muse*, 146 Md.App. at 405, 807 A.2d at 118–19. Muse argued that the traffic stop was unreasonable because a cracked windshield does not violate any specific statutory provision in the Maryland Code. *Id.* at 401, 807 A.2d at 116. We held that although a cracked windshield is not, itself, a violation of the Code, the officer "could reasonably be concerned that the crack rendered the vehicle 'unsafe' " such that he was justified to initiate a traffic stop and issue a repair order pursuant to § 22–101(a)(1)(i). *Id.* at 405, 807 A.2d at 118–19.

It is reasonable for an officer to render unsafe a vehicle operating with a malfunctioning rear deck brake light. The National Highway Traffic Safety Administration ("NHTSA") of the United States Department of Transportation underscores the unsafe nature of operating a vehicle with a malfunctioning rear deck brake light. Promulgated by the NHTSA, Federal Motor Vehicle Safety Standard No. 108, specifies the requirements for brake lights, among other lighting equipment, on motor vehicles. 49 C.F.R. § 571.108 (2011). Standard 108 was enacted to "reduce traffic accidents and deaths and injuries resulting from traffic accidents, by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads so that their presence is perceived and their signals understood." *Id.* The Standard specifies also the requirement of a rear deck brake light on certain vehicles. *Id.*

Standard 108 requires all vehicles manufactured on or after September 1, 1985 to have at least three brake lights including one center high-mounted brake light. *Id.* The specific purpose for the high-mounted brake light is to "prevent[ ] crashes by reducing the reaction time for drivers to notice that the vehicle in front of them is braking." Nat'l Highway Traffic

Safety Admin., U.S. Dep't of Transp., The Long–Term Effectiveness of Center High Mounted Stop Lamps in Passenger Cars and Light Trucks v (1998). Moreover, a study conducted by the NHTSA found that from 1986 to 1995, the high-mounted brake light reduced the frequency of rear impact accidents in every year the study was conducted. *Id.* at 7. The study indicated also that the distinct and separate location of the high-mounted brake light, apart from the other two rear brake lights, makes it easier for drivers to notice because it is where they are most likely to glance. *Id.* at 1. Therefore, even with two functioning rear brake lights, the specific safety advantages of the center high-mounted brake light demand that it function properly.

In this case, it was reasonable for Detective Ramberg to conclude that the vehicle was being driven in an unsafe condition. He observed that the vehicle's rear deck brake light did not function. He initiated the stop to tell the driver that the light was inoperable and to issue a safety equipment repair order. Although the two side rear brake lights were functioning, the rear deck brake light carries specific safety advantages including reducing the reaction time for following drivers to prevent rear impact accidents. The rear deck brake light is located specifically higher and central on the vehicle because it is most likely where a following driver will glance. Thus, if it is not a violation of the Transportation Article to drive a vehicle with one inoperable brake light, when two others are functional, it was reasonable nonetheless for Detective Ramberg to initiate the traffic stop on the basis that driving a vehicle with a malfunctioning rear deck brake light renders the vehicle unsafe such that it poses a danger to the driver, passenger, or any other person on the road. Accordingly, the officers were lawfully entitled to initiate the traffic stop.

*JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*