*George Spell v. State*, No. 2163, September Term, 2017

PROBABLE CAUSE TO ARREST — SUFFICIENCY OF THE EVIDENCE — CONSTRUCTIVE POSSESSION

The police had probable cause to believe that appellant was driving without a license. Appellant admitted that he did not have a license. And there is no question that appellant's actions, sitting in the vehicle with the engine running, constituted driving. *Motor Vehicle Admin v. Atterbeary*, 368 Md. 480, 503 (2002) (motorist was "driving" when he was "sitting in the driver's seat, awake, with the vehicle's engine running"). Under these circumstances, the circuit court properly found that the officers had probable cause to arrest appellant and to search him incident to arrest.

The evidence was sufficient for the jury to find beyond a reasonable doubt that appellant possessed the contraband in the utility room. Appellant was found across the street from the building in which a utility room containing drugs, drug paraphernalia, and a firearm, much of it in plain view, was located. Appellant had a key to the utility room, and he had yellow-topped vials of cocaine that were consistent with those found in the utility room. The jury reasonably could infer that the yellow-topped vials on appellant's person came from the utility room and that appellant exercised dominion and control over the contraband in that room.

Circuit Court for Baltimore City
Case No. 117187014

_____

GEORGE SPELL

v.

STATE OF MARYLAND

_____

Graeff,
Shaw Geter,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed: November 28, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ° authentic.



Suzanne C. Johnson, Acting Clerk

On December 11, 2017, George Spell, appellant, was convicted by a jury, in the Circuit Court for Baltimore City, of several firearm offenses relating to a firearm found in a utility room in an apartment complex and several drug offenses relating to drugs found in the utility room and on appellant's person. The court imposed concurrent sentences totaling 12 years of imprisonment.[1]

On appeal, appellant presents the following questions for this Court's review, which we have rephrased, as follows:

1. Did the circuit court err in denying appellant's motion to suppress?

2. Was the evidence insufficient to support appellant's convictions relating to the contraband found in the utility room?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

### Suppression Hearing

Officers Anthony Casabona and Norman Jones, members of the Baltimore City Police Department, testified that, on June 15, 2017, at approximately 2:00 p.m., they were driving down Madison Street in Baltimore patrolling for crimes related to the sale of

---

[1] The convictions and concurrent sentences imposed were as follows: possession of a regulated firearm after conviction of a disqualifying crime, five years without the possibility of parole; possession of a regulated firearm after conviction of a felony, five years with parole; possession of a firearm after conviction of a felony, five years with parole; possession with intent to distribute heroin, 12 years; two counts of possession with intent to distribute cocaine, 12 years each; firearm possession with nexus to drug trafficking, five years; and possession of paraphernalia: $0 fine.

narcotics. They saw appellant parked on the street, sitting in the driver's seat of a silver Hyundai Sante Fe, with the vehicle running. The officers previously had encountered appellant in February 2017, when they arrested him in connection with a search and seizure warrant relating to a narcotics investigation.[2] The officers knew as well from the prior encounter that appellant did not have a driver's license, so they decided to "investigate further."

Officer Casabona parked the car parallel to appellant's car, and Officer Jones began to speak with appellant from the passenger seat of the police vehicle. Officer Jones asked appellant what he was doing driving the vehicle, stating that he knew appellant "didn't have a license." Appellant responded: "I know, but I ain't doing nothing but chilling man." Both officers testified that it was illegal to drive or operate a motor vehicle without a license. At that point, they believed that they had probable cause to arrest appellant. Officer Jones stated that the following then ensued:

> I spoke to him for a few moments. Later, I asked him if he had anything illegal on his person. He told me no. I asked him if I can check him out. He said yes, gave me full consent.
>
> At that time, I exited the car and approached the driver's side door. [Appellant] exited out of the vehicle. And as soon as he came out, I began to search his person and found narcotics in his front pocket.

---

[2] The silver Hyundai Sante Fe that appellant occupied during the June 15, 2017 encounter was the same vehicle that appellant had told the officers he owned during his February 2017 encounter with them.

2

During the search of appellant's person, Officer Jones found a plastic bag containing ten vials of suspected cocaine. Nine of the vials had a yellow top, and one vial had a white top.

The officers then handcuffed appellant. They searched his vehicle and found a key, which Officer Casabona removed from the vehicle.[3] Officer Jones testified that the key resembled a utility room key similar to one that appellant had on his person during the February 2017 incident.

At some point after the officers handcuffed appellant, Officer Jones received a text message from a confidential informant ("CI") stating that appellant had a handgun and was using the same "stash" locations that had been used when he was arrested for narcotics violations in February 2017. The locations to which the CI referred were utility rooms in apartments buildings at 1536 and 1534 East Madison, across the street from where appellant and his car were found. The messages said that a gun "was stashed in one of the buildings." The information received from the CI was sent via text, and Officer Jones testified that he always deletes text messages from his CIs, so he could not remember the exact language of the message.

Officers Casabona and Jones then walked toward the buildings. They first went to 1536 Madison, and used the key found in appellant's vehicle to open two utility rooms at that location. They then opened and searched the second-floor utility room at 1534 Madison, where they found controlled dangerous substances ("CDS") and a handgun.

---

[3] The video footage shown at the suppression hearing shows that, prior to this time, other officers had arrived on the scene.

At the December 7, 2017, suppression hearing, the court initially addressed whether appellant had standing to challenge the search of the utility room where contraband was found. Appellant testified that he did not live in the building, but a maintenance man gave him a key to the laundry room so he could wash his laundry there. Based on this testimony, the circuit court found that appellant did not have a legitimate expectation of privacy in the utility room, and therefore, he did not have standing to challenge the search of that room.[4]

The court then addressed appellant's motion to suppress the evidence seized from his person. Counsel for appellant acknowledged that, because appellant was sitting in the car with the ignition on, he was operating a motor vehicle without a license, which permitted the officers to arrest appellant. Counsel argued, however, that the police did not arrest appellant for that offense, but rather, they "engage[d] in activities not related to the enforcement of the traffic code in order to determine whether there [was] sufficient indicia of some [other] illegal activity."[5]

The State argued that the police had probable cause to arrest appellant for operating a vehicle without a valid driver's license, that the search of appellant's person was proper as a search incident to arrest, and the narcotics found on appellant's person gave the police

---

[4] Appellant does not challenge the circuit court's ruling that he lacked standing to challenge the search of the utility room. As discussed, *infra*, however, he does argue that the evidence seized from the utility room should have been suppressed as the "fruit" of an illegal search and seizure of his person.

[5] Counsel also discussed whether appellant consented to a search of his person and the vehicle. The State, however, did not argue that as a justification for the police actions, the circuit court did not rely on consent in its suppression ruling, and the issue of consent is not raised on appeal.

probable cause to search the vehicle. The State asserted that there was no Fourth Amendment violation relating to these actions, and because appellant had no standing to contest the search of the utility room, the court should deny the motion to suppress.

The circuit court ultimately denied the motion to suppress. After considering the testimony of Officers Casabona and Jones, as well as the body camera footage, it found "that the officers had probable cause to arrest the [appellant], again based on their prior knowledge and information that he did not have a Maryland—valid Maryland driver's license." The court stated that appellant clearly was "operating a motor vehicle by sitting in the car with the car running," and therefore, the police "had probable cause to effectuate the arrest. And what was seized incident to the arrest certainly comes in, and is not fruit of any poisonous tree."

## Trial

Trial began on December 8, 2017. Officer Jones testified consistent with his testimony during the suppression hearing.[6] He testified that appellant was operating a vehicle without a license, and upon a search of appellant's person, he found a clear plastic bag containing ten vials of cocaine, nine with yellow tops and one with a white top. He further testified that he previously had seen the type of key found in appellant's vehicle, and he had used it to access a utility room at 1536 East Madison, where he had found narcotics.

---

[6] Officer Casabona did not testify at appellant's trial.

After finding appellant's key in June, they used it to open utility rooms in the same area, and they found "[a] large amount of narcotics, as well as a firearm," in 1534 East Madison. Officer Jones explained:

> There was heroin in gelcap form. There was cocaine that was in vials, specific vials. There was other paraphernalia to go along with it. There were tops that go on top of the vials specifically matching the tops of—the colors of the tops that we recovered from [appellant.]

There were 30 vials with yellow tops, which contained a white powder substance. The police also found a 9mm semiautomatic pistol in the utility room.[7]

Officer Jones, who was accepted as an expert in the field of narcotics investigation and enforcement, testified that a "stash" is a place "where somebody can place or hide any type of items," and it typically holds narcotics and/or a firearm. Based on his knowledge, training, experience, and expertise, Officer Jones explained that firearms are used in narcotics distribution because "[e]very drug shop has to have some means of protection" from "outside sources of competition … to protect themselves from getting robbed or anything like that." Officer Jones opined that the purpose of the firearm seized in the utility room was to protect the narcotics in the room. He further opined that the amount of

---

[7] The body cam footage shows that the utility room, which appeared to be more of a junk room, contained a hot water heater, a small glass table, an oven, a blue backpack, and various debris and boxes. The firearm was recovered from inside the oven. Heroin gelcaps were found in a small open box in plain view on the glass table. The vials of cocaine were found inside the blue backpack, which was open.

6

suspected heroin and suspected cocaine seized from the utility room was indicative of intent to distribute.[8]

Jennifer Ingbretson, a forensic scientist with the Baltimore City Police Department, testified that the firearm found in the utility room was operable. To her knowledge, no DNA testing was performed on the handgun, but she noted that information gained from testing for DNA on guns often is "not very probative."

Mr. Barry Verger, also a forensic scientist, tested the substances found in the utility room and on appellant's person. The substances in the vials found on appellant's person and the utility room tested positive for cocaine. The substances found in the gelcaps in the utility room tested positive for heroin.

The State and the defense stipulated that appellant previously was convicted of a crime that "prohibited him from possessing a regulated firearm, as it applie[d] to Counts 2, 3, and 4 of the charging document," and that he previously had been convicted of a drug felony.

Additional facts will be discussed as necessary in the discussion that follows.

### DISCUSSION

### I.

### Motion to Suppress

Appellant does not challenge the initial traffic stop for operating a vehicle without

---

[8] The CI's statements to Officer Jones were not introduced at trial. Moreover, neither Officer Jones nor any other State's witness offered testimony as to the uniqueness (or lack thereof) of the color of the caps on the cocaine vials specifically with regard to appellant or generally in the drug trade in Baltimore.

a license, but he contends that the "officers' actions following the initial stop violated the Fourth Amendment." He asserts that, although "the officers may have had probable cause to detain [him] for driving without a license . . . the legitimate traffic stop lapsed into an unconstitutional narcotics investigation as soon as [he] answered Officer Jones' question about his license."

The State disagrees. It contends that the traffic stop was valid because the officers stopped appellant for a "valid traffic violation," and the police "acted reasonably during the stop," which ended in appellant's arrest.

This Court has set forth the proper standard of review of a motion to suppress as follows:

> We review a denial of a motion to suppress evidence seized pursuant to a warrantless search based on the record of the suppression hearing, not the subsequent trial. *State v. Nieves*, 383 Md. 573, 581, 861 A.2d 62 (2004). We consider the evidence in the light most favorable to the prevailing party, here, the State. *Gorman v. State*, 168 Md. App. 412, 421, 897 A.2d 242 (2006) (Quotation omitted). We also "accept the suppression court's first-level factual findings unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses." *Id.* "We exercise plenary review of the suppression court's conclusions of law," and "make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case." *Id.*

*Goodwin v. State*, 235 Md. App. 263, 274 (2017) (quoting *Bowling v. State*, 227 Md. App. 460, 466–67 (2015)), *cert. denied*, 457 Md. 671 (2018).

The Fourth Amendment to the Constitution of the United States protects against "unreasonable searches and seizures." U.S. Const. amend. IV. It is "made applicable against the States through the Fourteenth Amendment." *Smith v. State*, 214 Md. App. 195, 201 (2013), *cert. denied*, 436 Md. 330 (2013).

"A police-initiated traffic stop constitutes a seizure within the confines of the Fourth Amendment." *Id.* As indicated, appellant does not challenge the initial stop; he concedes that it was proper because the police had probable cause to believe that he was driving without a license.

The State argues that the police had probable cause to justify not only the stop but also appellant's arrest. "Probable cause to arrest 'exists where the facts and circumstances within the knowledge of the officer at the time of the arrest, or of which the officer has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect had committed or was committing a criminal offense.'" *Barrett v. State*, 234 Md. App. 653, 666 (2017) (quoting *Moulden v. State*, 212 Md. App. 331, 344 (2013)), *cert. denied*, 457 Md. 401 (2018). Probable cause "'requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion.'" *Id.* (quoting *Moulden*, 212 Md. App. at 344).

Maryland Code (2012 Repl. Vol.) § 26-202(a) of the Transportation Article ("TR") provides, in relevant part, as follows:

> (a) A police officer may arrest without a warrant a person for a violation of the Maryland Vehicle Law, including any rule or regulation adopted under it, or for a violation of any traffic law or ordinance of any local authority of this State, if:
>   . . .
>   (3) The officer has probable cause to believe that the person has committed the violation, and the violation is any of the following offenses:
>   . . .
>     (viii) Driving or attempting to drive a vehicle in violation of § 16-101 of this article [which generally requires an individual to have a driver's license]

The term "drive" is defined, in relevant part, as: "to drive, operate, move, or be in actual physical control of a vehicle." TR § 11-114.

The record here supports the circuit court's conclusion that the police had probable cause to believe that appellant was driving without a license. The police had reason to believe from a prior encounter in February 2017 that appellant may not have had a license on June 15, 2017, which appellant confirmed to be a fact. When Officer Jones asked: "[W]hat are you doing driving that car. You know you don't have a license," appellant stated: "I know, but I ain't doing nothing but chilling man." And there is no question that appellant's actions, sitting in the vehicle with the engine running, constituted driving. *Motor Vehicle Admin. v. Atterbeary*, 368 Md. 480, 503 (2002) (motorist was "driving" when he was "sitting in the driver's seat, awake, with the vehicle's engine running"). Under these circumstances, the circuit court properly found that the officers had probable cause to arrest appellant.[9]

Appellant contends that, even if the officers had probable cause to arrest him, the search of his person was not a valid search incident to arrest because it occurred prior to the time the police put him in handcuffs. This contention similarly is without merit.

Once a person is lawfully arrested, the "police may search 'the person of the arrestee' as well as 'the area within the control of the arrestee' to remove any weapons or

_____

[9] *Whitehead v. State*, 116 Md. App. 497, *cert. denied*, 348 Md. 207 (1997); and *Charity v. State*, 132 Md. App. 598, *cert. denied*, 360 Md. 487 (2000), upon which appellant relies, did not question probable cause to arrest, and therefore, they are inapposite.

10

evidence that could be concealed or destroyed.'" *Conboy v. State*, 155 Md. App. 353, 364 (2004) (quoting *United States v. Robinson*, 414 U.S. 218, 224 (1973)). That the search occurs immediately before the formal arrest does not invalidate it because "it is not 'particularly important that the search precede the arrest rather than vice versa.'" *Id.* (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). *Accord Barrett*, 234 Md. App. at 672 ("The United States Supreme Court has made clear that a search may qualify as a search incident to arrest even if, sequentially, the search occurs prior to the arrest."). A search incident to arrest is valid as long as the search is "essentially contemporaneous" with the arrest, regardless of whether the search or arrest occurs first. *Wilson v. State*, 150 Md. App. 658, 673 (2003).

Here, the body camera footage shows that appellant was arrested within seconds of the search. Accordingly, the circuit court properly concluded that the search of appellant's person was a valid search incident to arrest. It properly denied appellant's motion to suppress.[10]

---

[10] Appellant further argues that the search of his "car and the evidence obtained thereby should have been suppressed as 'fruit of the poisonous tree.'" Because we have determined that the stop, detention, arrest, and search of appellant were reasonable under the Fourth Amendment, there is no "poisonous tree," and therefore, there is no "fruit" as a result of improper police conduct. *See Cox v. State*, 194 Md. App. 629, 652 (2010) (the fruit of the poisonous tree doctrine serves to exclude evidence that is the direct or indirect product of police conduct that violated the Fourth Amendment).

11

## II.

## Sufficiency of the Evidence

Appellant next contends that the evidence was insufficient to support his convictions relating to the contraband found in the utility room. He asserts that the State did not meet its burden of proof that he possessed the drugs, paraphernalia, and firearm found in that room.[11]

The State contends that there was sufficient evidence to support the convictions. It asserts that "[t]he jury had enough evidence to infer Spell was using the utility room as a stash: he had both matching narcotics and a key, and the key unlocked a room where he could easily access those same narcotics."

The Court of Appeals recently explained the applicable standard of review in addressing a challenge to the sufficiency of the evidence to support a criminal conviction:

> In determining whether the evidence is legally sufficient, we examine the record solely to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McKenzie v. State*, 407 Md. 120, 136, 962 A.2d 998, 1007 (2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560, 571 (1979)). In examining the record, we view the State's evidence, including all reasonable inferences to be drawn therefrom, in the light most favorable to the State. *State v. Rendelman*, 404 Md. 500, 513–14, 947 A.2d 546, 553 (2008) (citing *Harrison v. State*, 382 Md. 477, 487–88, 855 A.2d 1220, 1226 (2004)); *State v. Suddith*, 379 Md. 425, 429–31, 842 A.2d 716, 718–19 (2004) (citing *State v. Smith*, 374 Md. 527, 533–34, 823 A.2d 664, 668 (2003)). In so doing, "[i]t is not our role to retry the case." *Smith v. State,* 415 Md. 174, 185, 999 A.2d 986, 992 (2010). Rather, "[b]ecause the fact-finder possesses the unique opportunity to view the

_____

[11] Appellant does not specify the convictions that he contends are encompassed in this argument, but the record indicates that it includes all but one of the convictions, i.e., the conviction of possession with intent to distribute cocaine based on the drugs found on appellant's person, for which appellant received a 12-year sentence.

12

evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence." *Id.* (citing *Tarray v. State*, 410 Md. 594, 608, 979 A.2d 729, 737 (2009)). We defer to any possible reasonable inferences the jury could have drawn from the admitted evidence and need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence. *Smith,* 374 Md. at 557, 823 A.2d at 682; *see also State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994) ("[I]t is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case.").

*Fuentes v. State,* 454 Md. 296, 307–08 (2017).

Here, the critical issue is whether there was sufficient evidence for the jury to find the appellant possessed the contraband found in the utility room. "'Possess' means to exercise actual or constructive dominion or control over a thing by one or more persons." Md. Code (2012 Repl. Vol., 2017 Supp.) § 5-101(v) of the Criminal Law Article. To prove dominion or control, the "'evidence must show directly or support a rational inference that the accused . . . exercised some restraining or direct influence over'" the contraband. *State v. Gutierrez*, 446 Md. 221, 233 (2016) (quoting *Moye v. State*, 369 Md. 2, 13 (2002)). That contraband is not found on the defendant's person does not prevent the trier of fact from drawing the inference that the defendant was in possession of the contraband. *Id.* at 234.

The Maryland appellate courts have set forth four factors to consider in determining whether evidence is sufficient to support a finding of constructive possession:

"[1] the defendant's proximity to the drugs, [2] whether the drugs were in plain view of and/or accessible to the defendant, [3] whether there was indicia of mutual use and enjoyment of the drugs, and [4] whether the defendant has an ownership or possessory interest in the location where the police discovered the drugs."

13

*Guttierrez*, 446 Md. at 234 (quoting *Smith v. State*, 415 Md. 174, 198 (2010)). *Accord Kamara v. State*, 205 Md. App. 607, 633 (2012).

These four factors, although relevant to the inquiry of possession, constitute a "non-exclusive" list. *Belote v. State*, 199 Md. App. 46, 55 (2011). "None of these factors are, in and of themselves, conclusive evidence of possession" because possession must be determined by "examining the facts and circumstances of each case." *Smith*, 415 Md. at 198.

In addressing the four factors, we begin with the ones on which the parties agree. With respect to the fourth factor, both parties assert, and we agree, that there was no evidence that appellant had an ownership or possessory interest in the utility room. As the parties recognized, however, this alone does not prevent a finding of possession. *Cook v. State*, 84 Md. App. 122, 135 (1990) (where Cook found in house being used as a base for a drug operation, there was sufficient evidence to find Cook in possession of drugs despite his lack of possessory interest in the house), *cert. denied*, 321 Md. 502 (1991).

With respect to the second factor, the State argues, and counsel for appellant conceded at oral argument, that the evidence indicated that appellant had access to the utility room. We agree, given that the key to the utility room was found in appellant's car.

Appellant argues, however, citing *State v. Leach*, 296 Md. 591 (1983), that access to a location where drugs are found is not sufficient to infer possession. In *Leach*, the defendant was charged with possession of PCP found in a closed container in the bedroom of an apartment occupied by Leach's brother. *Id.* at 596. The circuit court found that Leach's brother was the only occupant. *Id.* at 595. Although Leach had a key to the

14

apartment, and therefore, ready access to the apartment, the Court of Appeals held that there was nothing to show that Leach had control over the PCP found in the closed container on the bedroom dresser, or over the paraphernalia found in the bedroom closet. *Id.* at 595–96. The Court explained that there was no evidence that linked Leach to the PCP. *Id.* at 597.

Here, by contrast, there was more than mere access to the general location where the drugs were found. Unlike in *Leach*, there was evidence connecting appellant to the specific room in the building where the contraband was found. Drugs found in the utility room included yellow-topped vials of cocaine that matched (to that degree) the yellow-topped vials of cocaine found on appellant's person.

These matching yellow-topped vials of cocaine were relevant to the third factor, indicia of use and enjoyment of the contraband. They permitted a rational trier of fact to infer that appellant was participating in the use and enjoyment of the drugs in the utility room and that he exercised dominion and control over them. *See Commonwealth v. Delarosa*, 740 N.E.2d 1014, 1018 (Mass. App. Ct. 2000) ("'In some cases a defendant's connection to a stash of narcotic drugs [may be] established largely by the close similarity of the narcotic drugs in his actual possession . . . to the narcotic drugs in the stash.'") (quoting *Commonwealth v. James*, 570 N.E.2d 168, 172 (Mass. App. Ct. 1991)), *review denied*, 752 N.E.2d 239 (2001). *See also U.S. v. Smith*, 520 F.2d 74, 76 (D.C. Cir. 1975) (where marijuana on sidewalk outside of defendant's apartment was found "in a bag like

15

other bags found" in appellant's apartment, court upheld finding that "control of one was the source of control of the other").[12]

Finally, with respect to the first factor, proximity to the drugs, the State argues that appellant, who was across the street from the building in which the utility room was located, "was within an appropriate proximity to his 'stash' for the jury to weigh [this factor] against him." It points to the testimony of Officer Jones, an expert in narcotics distribution, who explained the concept of a "stash," a location where drug dealers keep narcotics and firearms at a sufficient distance from the dealer to avoid being charged with possession of that contraband.

When asked at oral argument if there was any case upholding the sufficiency of evidence for a conviction of constructive possession when the defendant was found a similar distance from the contraband, the State indicated that it was not aware of any such case. We note, however, that, in *Delarosa*, 740 N.E. 2d at 1017–18, the Appeals Court of Massachusetts upheld Delarosa's conviction for constructive possession of cocaine found in an apartment to which he was connected, even though he was not in the apartment at the time the drugs were found. Rather, as in this case, Delarosa was found in his car outside the location of the apartment, but he was in possession of drugs in bags "identical to the bags" in the apartment. *Id.* at 1018.

---

[12] Appellant does not argue that a separate analysis is required for the gun found in the utility room. Officer Jones, an expert in narcotics enforcement, testified that guns are used in narcotics distribution for protection, and he opined that the purpose of the weapon in the utility room was to protect the drugs found there.

After our review of the relevant factors, and applying the appropriate standard of review, giving deference "to the inferences that a fact-finder may draw," *Smith*, 415 Md. at 183, we conclude that the evidence was sufficient for the jury to find beyond a reasonable doubt that appellant possessed the contraband in the utility room. Appellant was found across the street from the building in which a utility room containing drugs, drug paraphernalia, and a firearm, much of it in plain view, was located. Appellant had a key to the utility room, and he had yellow-topped vials of cocaine that were consistent with those found in the utility room. The jury reasonably could infer that the yellow-topped vials on appellant's person came from the utility room and that appellant exercised dominion and control over the contraband in that room.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**