JAMES P. CORBETT *v.* STATE OF MARYLAND

[No. 244, September Term, 1967.]

*Decided June 4, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Richard W. Moore* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barry S. Frame, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

James P. Corbett, the appellant, was convicted of unauthorized use of an automobile, in the Criminal Court of Baltimore, in a trial before the court without a jury. Corbett complains that the lower court was clearly erroneous in considering facts not in the record. There were also other contentions which we need not consider.

The evidence adduced at the trial showed that on March 15, 1967 at about 3:30 P.M., Helen Smith reported to the police that her 1964 Oldsmobile had been stolen. An hour later, Officer Garrity, while on radio car patrol duty, recovered the car. Garrity chased the automobile after the driver failed to obey a stop sign. At the end of the chase, the three occupants of the car fled from the scene; however, Officer Garrity did apprehend one of them—Corbett.

Two alibi witnesses testified for the defense; in addition Ronald Morgan made an in-court confession that he committed the crime but managed to elude the police officers in the alley in which Corbett was apprehended. He stated further that Corbett was not with him and had no part in the crime. In announcing his findings of fact the trial judge stated:

"THE COURT: Well, gentlemen, I am going to hold this sub curia. . . .

"I think that as far as Morgan's testimony is concerned, if he did do this, he's done a very courageous and honest thing by coming forward and admitting that he did it. On the other hand, his prior record is not good. He casts some doubt upon the truthfulness of the testimony and I am worried and suspicious over the testimony that he was in the car with two other men or boys and he never knew their names and still doesn't know who they were.

"There's a lot of unusual things about this case and one thing is Morgan's testimony that he stole the car with two virtual strangers, whose names he's never known, and they ran one way and he ran the other when the police caught up to them. If he did do it, he is doing a very honest and courageous thing, but his story has some loopholes in it, such as his ignorance of his two accomplices."

Subsequently, when the judge announced his decision, after referring to the testimony of the police officer, the court said:

"THE COURT: We have that testimony, and then, of course, Morgan takes the stand and took the blame for the whole crime; that he said that he was the one who had stolen the automobile, and Corbett had not, and quite frankly, when I first heard Morgan testify to that effect, I was impressed with it. He also testified that he does not know Corbett; that was my recollection, and I had the reporter type up that part of Morgan's testimony. The question was, 'Do you know the defendant, Corbett? Answer: No; I don't know him. Question: Never knew him? Answer: Just re-

cently I have seen him, but I don't know him; not specifically to say that he is my friend, no; I can't say that. . . .' "

\* \* \*

"THE COURT: Then I asked, I said, 'How did you find out Corbett was being charged with the larceny of this automobile? Answer: Well, prior to the time I came over here, some friends that do know James Corbett told me, they asked me, "did you hear how that boy had been locked up?" I said, who? They said, "James Corbett." I asked, for what? At the time they described the crime he had committed, I knew right then and there it wasn't him.' Now, considerable doubt is thrown on the testimony of Morgan by his testimony that he never knew Corbett.

"MR. MOORE: That is not a fair interpretation.

"THE COURT: Well, now, I will read it again. 'Do you know the defendant, Corbett? Answer: No; I don't know him. Question: Never knew him? Just recently I have seen him, but I don't know him; not specifically to say that he is my friend; no; I can't say that.' *The source of my doubt is that since the beginning of the trial of this case, I found out that Morgan and Corbett are charged jointly in several other cases, as co-defendants, so that it is hard for me to place much faith in what Morgan testified to when he said, 'No, I don't know him,' and he is being charged along with Corbett in other offenses. He must know him.*

"*I am convinced in my mind that Morgan not only knows Corbett, but he has known him for some time, and that Corbett knows Morgan, and for that reason, I find it quite difficult to believe that Morgan, for reasons of his own, actually committed the crime, which at least he says he did.*" (Emphasis added)

Maryland Rule 1086 provides as follows:

"When a case has been tried by the lower court without a jury, this Court will review the case upon

both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

We hold that the trial judge was clearly erroneous when he relied upon knowledge acquired from outside of the record that Corbett and Morgan had been jointly indicted for other offenses. The other indictments were not introduced into evidence and were not called to the attention of the judge on the record, and it was not until the decision was announced that the trial judge indicated that he had any knowledge of these other indictments.

In civil cases the Court of Appeals of Maryland has laid down the rule that it may take judicial notice of other proceedings in cases before it, *Jeweler v. Potomac Electric Power Company*, 217 Md. 458, 144 A. 2d 66, but the Court has laid down a different rule with respect to trial courts. In *Fletcher v. Flournoy*, 198 Md. 53, 81 A. 2d 232, 235 the Court said:

"We are asked to say that the lower court—and this court — may take judicial notice of the record in that case in Montgomery County, in the court in which the instant case was instituted and from which it was removed to Howard County. In a recent case of the present plaintiff against Judge Bryan, *Fletcher v. Bryan*, 175 F. 2d 716, 717, the United States Court of Appeals for the Fourth Circuit quoted and followed a statement in its opinion by Judge Soper in *Morse v. Lewis*, 4 Cir., 54 F. 2d 1027, 'The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. * * * But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established and uncontroverted facts not formally of

record in the pending litigation.' In the instant case, the demands of justice do not suggest an exception to settled rules. Rule 2 itself provides a simple and inexpensive way to present such records in the form of 'Sworn, or certified or photostatic copies' attached to or filed with an affidavit. This court, like the Supreme Court (*DeBearn v. Safe Deposit and Trust Company,* 233 U. S. 24, 32, 34 S. Ct. 584, 58 L. Ed. 833), takes judicial notice of its own records, in the instant case as in other cases. *Christopher v. Sisk,* 133 Md. 48, 50, 104 A. 355; *Snodgrass v. Stubbs,* Md., 64 A. 2d 130, 133. As to trial courts, the general rule stated by Judge Soper is law in Maryland. This situation has for many years been regulated by statutes which make original papers admissible in lieu of certified copies. Code, art. 35, sec. 88; Baltimore City Charter, (1949 Ed.), sec. 308. If in this respect the scope of judicial notice should be broadened, we can accomplish such a result only by exercise of the rule-making power, not by departing from settled law in a particular case."

The rule adopted in Maryland seems to be the general rule, 9 Wigmore: *Evidence* § 2579 at 570 (3rd ed.); McCormick, *Evidence* § 327. Wharton states, however, that in criminal cases there is a division of authority, 1 Wharton *Criminal Evidence,* § 63 (12th ed.), but we do not think that a less stringent rule should be applied in criminal cases, where liberty is at stake, than in civil cases, where usually only property is at stake. Especially do we think that the rule should not be relaxed here where the information was not called to the attention of the witness for a possible explanation; and where the trial judge relied on unproven indictments to determine that the witness, Morgan, was unreliable. It is, of course, possible that the same determination would have been reached on the other evidence, but we cannot thus place ourselves in the position of the trial judge and ignore what he said.

*Judgment reversed and case remanded for a new trial.*