*Luis Christian Rivera v. State of Maryland*, No. 116, September Term, 2019.  Opinion by Eyler, James R., J.

**CRIMINAL PROCEDURE — PRESERVATION — BENCH TRIALS — CONTEMPORANEOUS OBJECTION RULE – MARYLAND RULE 4-323(c):** Ordinarily, in a bench trial or jury trial, to preserve an issue for appellate review, a defendant must lodge a contemporaneous objection to the trial court's adverse ruling.

**CRIMINAL PROCEDURE — PRESERVATION — BENCH TRIALS — SUFFICIENCY OF THE EVIDENCE - MARYLAND RULE 8-131(c):**  Ever since the Maryland Rules were amended, in 1950, to provide for appellate review of sufficiency claims in criminal cases tried without a jury, it has been the uniform practice of Maryland appellate courts to review such claims without the necessity of a defendant having made either an objection or motion for judgment of acquittal at trial.

**CRIMINAL PROCEDURE — PRESERVATION — BENCH TRIALS — MATTERS NOT IN EVIDENCE:**  A claim that a trial court has considered matters not in evidence is distinguishable from a claim of evidentiary insufficiency.  Historically, the purpose of Maryland Rule 8-131(c), as applicable to criminal cases, has been to mandate appellate review of sufficiency claims in appeals from verdicts rendered in bench trials. The rule does not obviate the requirement of a contemporaneous objection to preserve other claims alleging defects in the verdict.

**CRIMINAL PROCEDURE — PRESERVATION — BENCH TRIALS — MATTERS NOT IN EVIDENCE:**  Because Rivera did not object to the trial court's references, in its pronouncement of the verdict, to facts not in evidence, his claim of error was not preserved for appellate review.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 116

September Term, 2019

_____

LUIS CHRISTIAN RIVERA

v.

STATE OF MARYLAND

_____

*Meredith,
Graeff,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, James R., J.

_____

Filed:  October 6, 2020

*Meredith, J., now retired, participated in the conference of this case while an active member of the Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this Opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant, Luis Christian Rivera, was convicted by the Circuit Court for Cecil County, after a bench trial, of the manufacture of crack cocaine, possession of crack cocaine, possession of heroin, possession of Suboxone,[1] and possession of paraphernalia (specifically, a digital scale). The court thereafter sentenced appellant to a term of twelve years' imprisonment,[2] prompting this appeal, in which he raises two issues which we have rephrased slightly:

I. Whether the trial court erred in basing its verdict on information outside the evidence; and

II. Whether the evidence was sufficient to prove beyond a reasonable doubt that appellant possessed the drugs and paraphernalia in the apartment.

With respect to the first issue, the State contends that it was not preserved for appellate review because appellant did not object when the court delivered its verdict. With respect to the second issue, the State contends that the evidence is legally sufficient.

We hold that the first issue was unpreserved. We also conclude that the evidence was legally sufficient to sustain the convictions, and therefore, we affirm the judgments.

## BACKGROUND

A single witness testified at appellant's bench trial: Maryland State Trooper Michael Dowling. According to Trooper Dowling, he, along with "seven [or] eight"

---

[1] According to the testimony, Suboxone is a controlled substance used in opiate withdrawal.

[2] The court sentenced appellant to twelve years' imprisonment for manufacture of crack cocaine, merged the conviction for simple possession of the same drug, and suspended the sentence on the remaining convictions.

other law enforcement officers, executed a no-knock search warrant at an Elkton apartment after confirming that a controlled purchase of crack cocaine had occurred there. When they entered, the officers observed that the apartment contained a common area as well as two bedrooms and a bathroom. Appellant and a sixteen-year-old girl were in one bedroom, and an "adult male" and an "adult female" were in the other. Although Trooper Dowling was "unsure" whether the other couple "were sleeping or not," he testified that appellant and the juvenile were awake.

The officers recovered $778 in United States currency, in a wallet, which was on a television stand in appellant's bedroom. Appellant acknowledged that the currency belonged to him but maintained that it "came from his music proceeds." On that same television stand, officers recovered mail that was addressed to appellant at the residence where the search warrant was executed. "[A]long with the wallet" was a "suboxone sublingual strip." Three additional strips were found "underneath [appellant's] bed in a bag with other CDS." Appellant did not have a prescription for the Suboxone strips.

In addition to the Suboxone strips, the "clear bag" found beneath appellant's bed contained eighteen smaller "bags of blue wax folds containing" heroin and a "bag of [crack] cocaine." A bag of marijuana was found on a "futon in plain view right beside the bed[.]" In a microwave oven in appellant's bedroom, police officers found a Pyrex "measuring cup containing white residue," which was determined to be crack cocaine. On top of the microwave were "two measuring cups," a spoon, and baking soda, which, according to Trooper Dowling, were used to manufacture crack cocaine.

In addition to the aforementioned physical evidence seized from appellant's bedroom, to which Trooper Dowling testified, two digital scales also were recovered. Although Trooper Dowling was never asked about them, and he did not mention them during his testimony, a forensic laboratory report, prepared by a Maryland State Police forensic scientist, was admitted into evidence. That report noted that two scales had been submitted along with the other physical evidence seized from appellant's bedroom. Trooper Dowling testified that all the physical evidence seized had been recovered from appellant's bedroom.

After Trooper Dowling finished testifying, the State rested. After the defense moved for judgment of acquittal, and the court denied its motion as to all counts except Count 1 (possession of crack cocaine with intent to distribute), the defense called the juvenile girl as a witness. Because the court was concerned that she might have grounds, under the Fifth Amendment, to refuse to testify, the court recessed so that it could appoint counsel to represent her. She ultimately exercised her right not to testify. Nine days after trial had commenced, the court rendered its verdict:

> THE COURT: All right. Well, with regard to the testimony -- and again, we're looking at constructive possession here -- you know, the factors that the Court looks at, the proximity of the defendant and the contraband. And again, based on the testimony of Trooper Dowling, he executed a search warrant at 859 East Old Philadelphia Road on January 30th of 2018, and **found Mr. Rivera in the second bedroom undressed in bed.**
>
> And then from there he described what was seized. Underneath the mattress they found two bundles of suspected heroin, and this is all from the same bedroom. **On top of the microwave was a digital scale.** On the TV stand was currency in the amount of $778. They found documents, mail, other items with the defendant's name. **Another digital scale.**

3

They found measuring cups containing white residue, spoons, baking soda and plastic bags. Suboxone strips were found under the mattress. No prescription was found. And again, a bag of cocaine and marijuana were underneath the bed. There was crack cocaine found inside the microwave in that Pyrex cup.

And then based -- and he gave testimony with regard to how you make crack cocaine and what items are used and how it's made using the microwave.

So again, based on -- and I recall the officer testifying that, again, a lot of these items, obviously not the items found underneath the mattress, but the other items found on the nightstand and on the TV stand were all in plain view.

Again, **if you take that in light of the fact that the defendant was there, he was sleeping**, there was mail and items with his identification on it in that residence.

So based on the Court's consideration of all of these factors and the testimony of Trooper Dowling, the Court is convinced beyond a reasonable doubt that the defendant is guilty of Counts 2 through 6.

(Emphasis added.) The matters in bold font were not in evidence. Appellant did not object. After the court imposed sentence, this timely appeal followed.

## DISCUSSION

## I.

Appellant claims that the circuit court's judgments must be reversed because, in its verdict, the court relied, in part, upon facts not in evidence; therefore, the court clearly erred. The State does not address the merits of this claim, instead countering that it was not preserved for our review because no objection was lodged below.

We have not located a reported Maryland appellate opinion in which the holding is on point. The precise issue before us is whether, after a bench trial, assuming the

4

evidence is legally sufficient to sustain the convictions, a defendant has to object when the court, in its verdict, relies on matters not in evidence.

Ordinarily, an objection or other appropriate action is required to preserve an issue for appellate review. *See* Md. Rule 4-323(c); *Bryant v. State*, 436 Md. 653, 669 (2014). The preservation issue before us is governed by Md. Rule 8-131(c). It provides:

> **(c) Action Tried Without a Jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

To provide context to interpret Rule 8-131(c), we briefly set out the history of appellate review of evidentiary sufficiency. Prior to 1950, appellate review of evidentiary sufficiency in Maryland criminal cases was not permitted. *Williams v. State*, 5 Md. App. 450, 453 (1968) (citations omitted), *cert. denied sub nom. McClelland v. State*, 252 Md. 731 (1969), *cert. denied sub nom. McClelland v. State*, 252 Md. 731, *cert. denied*, 252 Md. 734. In the case of jury trials, such review was deemed to be barred by Article XV, section 5,[3] of the Constitution of Maryland, which then provided: "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact." *Id.* (footnote omitted) (citations omitted). As for bench trials,

---

[3] Article XV, section 5, was later re-codified as the first paragraph of Article 23 of the Maryland Declaration of Rights. It is the same constitutional provision that was the subject of *Unger v. State*, 427 Md. 383 (2012), and its progeny. Prior to the decision of the Court of Appeals in *Stevenson v. State*, 289 Md. 167 (1980), that provision was interpreted quite literally, with only two court-created exceptions: whether a statute enacted by Congress or the General Assembly was constitutional; and whether evidence was admissible. *Unger*, 427 Md. at 412.

5

by analogy to the constitutional provision, it was repeatedly held by the Court of Appeals that it would not pass on the legal sufficiency of the evidence to convict where the case was tried by the court sitting as a jury.

*Id.* (citations omitted).

In 1949, the General Assembly enacted an amendment to Article XV, section 5, expressly permitting a court to rule on the sufficiency of the evidence in a criminal case tried by a jury.[4] 1949 Md. Laws, ch. 407. That amendment was ratified by the electorate in 1950 and became effective December 1, 1950, upon gubernatorial proclamation. *Williams*, 5 Md. App. at 454 n.7. At the same time, the General Assembly enacted an enabling statute, contingent on the passage of the constitutional amendment, providing for demurrers in criminal trials, the antecedent to what is now a motion for judgment of acquittal.[5] 1949 Md. Laws, ch. 596, § 655A. Subsequently, the Court of Appeals held that in a criminal case tried by a jury, appellate review of evidentiary sufficiency is predicated upon a trial court's denial of a motion for judgment of acquittal.[6] *See*, *e.g.*,

---

[4] As amended, the constitutional provision stated (and still states): "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

[5] The modern-day version of that statute is Criminal Procedure Article, § 6-104. The Court of Appeals has adopted Rule 4-324, which implements the statutory provision.

[6] Every version of the enabling statute has contained language expressly providing for appeal upon denial of a defendant's motion for judgment of acquittal (or, in the case of the original statute, his request for a jury instruction). *See* Md. Code (2001, 2018 Repl. Vol.), Criminal Procedure Article ("CP"), § 6-104(b)(2); Md. Code (1957, 1967 Repl. Vol., 1968 Cum. Supp.), Art. 27, § 593; Md. Code (1957, 1963 Cum. Supp.), Art. 27, § 593; Md. Code (1957), Art. 27, § 593; Md. Code (1951), Art. 27, § 700.

*Lotharp v. State*, 231 Md. 239, 240 (1963) (per curiam).  That remains true today.  *Starr v. State*, 405 Md. 293, 302 (2008) (citing *Lotharp*).

Meanwhile, the Court of Appeals adopted the General Rules of Practice and Procedure ("G.R.P.P."), effective January 1, 1950.  *Williams*, 5 Md. App. at 453.  Rule 7(c) of Part Four, relating to Criminal Rules, thereafter provided, in the case of bench trials:

> When a **criminal charge** has been so tried by the Court [i.e., sitting without a jury], an appeal may be taken as provided by law.  **Upon appeal the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction**, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

(Emphasis added.)

As of 1957, a similar rule appeared as Rule 886 a:

> When an action has been tried by the lower court without a jury, this Court [i.e., the Court of Appeals] will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses.

The principal difference between G.R.P.P. Rule 7(c) and Rule 886 a was that the latter applied to appeals from bench trials generally, both in criminal and civil cases.  Thus, Rule 886 a no longer contained express references to criminal cases or to the sufficiency of the evidence.  As applicable to criminal cases tried without a jury, there is no indication that any substantive change was intended.  And, as can readily be seen by comparison of Rule 886 a and modern-day Rule 8-131(c), there has been essentially no change in the rule since 1957.

7

It has always been true, and remains so today, that there is no preservation requirement for sufficiency claims in cases tried without a jury. As the *Williams* Court observed, in interpreting a rule substantially similar to Rule 8-131(c),[7]

> the issue [of sufficiency] comes before us in a case tried by the lower court sitting as a jury in a different posture than when the case is tried by a jury. In a non-jury case Rule 1086 specifically provides that we shall review the case upon the evidence (as well as the law) and we must determine whether the lower court was clearly wrong on the evidence in finding a verdict of guilty. In a jury case if the lower court finds upon motion for judgment of acquittal that the evidence is sufficient in law to justify a conviction, it denies the motion, and permits the evidence to go to the jury. On appeal we determine whether the denial of the motion was proper. **It is because of this difference in the posture of the issue of the sufficiency of the evidence that we may entertain the issue on appeal in a jury case only upon the denial by the lower court of a motion for judgment of acquittal but we must entertain the issue in a non-jury case when presented on appeal even in the absence of a motion for judgment of acquittal below.**

*Williams*, 5 Md. App. at 455-56 (footnotes omitted) (emphasis added).

More recently, shortly after the 1984 Rules re-codification, the Court of Appeals, in *Ennis v. State*, 306 Md. 579 (1986), explained the policy rationale underlying the differential treatment of sufficiency claims in bench trials versus jury trials. Ennis had been convicted by a jury of arson. *Id.* at 581. At trial, she had made a motion for judgment of acquittal at the close of the State's case, presented evidence on her own behalf, and then failed to renew her previous motion. *Id.* at 582-83. On appeal, she

---

[7] At the time *Williams* was decided, separate rules, Rule 886 a (applicable in the Court of Appeals) and Rule 1086 (applicable in this Court), governed review of cases tried by a court sitting without a jury. Those rules otherwise were substantively identical, and both rules are substantially similar to modern-day Rule 8-131(c).

8

claimed that the evidence had been insufficient, but we declined to consider the claim, holding that review was barred by Art. 27, § 593[8] and Rule 4-324. *Ennis*, 306 Md. at 583.

Ennis sought review in the Court of Appeals, claiming that the differential treatment of sufficiency claims in jury trials as compared with bench trials denied her due process and equal protection of the law. In rejecting Ennis's challenge and affirming the judgment, the Court of Appeals explained:

> A moment's reflection makes it evident that an undeniable purpose of Rules 886 and 1086 is to preclude the possibility that an arbitrary conviction will be entered by a single judge where the evidence sustaining the defendant's conviction is insufficient at law. The basic demands of due process and fundamental equity mandate that appellate review of such cases be provided.

*Id.* at 596.

In deciding the preservation issue in this case, we must bear in mind that appellate review of sufficiency has evolved since G.R.P.P. Rule 7(c) was first adopted. A question such as the one we are now facing was unlikely to arise during the first few decades after promulgation of the rule. It was not until the decision of the Supreme Court in *Burks v. United States*, 437 U.S. 1, 18 (1978),[9] that an appellate holding of evidentiary insufficiency barred a retrial of a criminal case. Prior to *Burks*, an appellate holding that

---

[8] The current version of this statute is Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article, § 6-104.

[9] In *Burks*, the Supreme Court held that the Double Jeopardy Clause "precludes a second trial once [an appellate] court has found the evidence legally insufficient[.]" *Burks*, 437 U.S. at 18.

9

the evidence was insufficient to sustain a conviction did not preclude a retrial in all cases. *See Gray v. State*, 254 Md. 385, 388 (1969) (observing that, "[s]ince this Court has had the power to review the sufficiency of the evidence it has done so in a number of cases, and when it has reversed for insufficiency its course has not been uniform"), *cert. denied*, 397 U.S. 944 (1970); *id.* at 393 (concluding that "the practice of remanding for a new trial after reversal for insufficiency of the evidence rather than remanding for entry of a judgment of acquittal, is permissible").[10] *Gray* collected cases in which the Court of Appeals had remanded for new trials after concluding that the evidence was insufficient to sustain the convictions, *id.* at 388 n.1, and correctly noted, without citation, that this Court had "followed the same course." *Id.* at 388.[11]

Thus, a claim that a trial court had considered matters not in evidence in rendering a verdict, prior to *Burks*, would have been subsumed within review of evidentiary sufficiency. *See*, *e.g.*, *Corbett v. State*, 4 Md. App. 269, 274 (1968) (in reversing for insufficient evidence because the trial court had relied upon matters not in evidence, the Court observed that it was "possible that the same determination would have been

---

[10] In *Gray*, the Court of Appeals applied the now-obsolete rule that, "if the record before the Court of Special Appeals indicates that additional probative evidence of guilt can be adduced by the State at another trial necessitated by the insufficiency of the evidence, a new trial should be awarded after a reversal if the interests of justice appear to require it," but that, "[i]f the record indicates that no additional probative evidence can be so adduced, the entry of a judgment of acquittal should be directed." *Gray*, 254 Md. at 397.

[11] *See*, *e.g.*, *Duppins v. State*, 17 Md. App. 464 (1973) (reversing judgment for insufficient evidence and remanding for new trial); *Nichols v. State*, 5 Md. App. 340 (1968) (same); *Corbett v. State*, 4 Md. App. 269 (1968) (same).

reached on the other evidence, but we cannot thus place ourselves in the position of the trial judge and ignore what he said").

More recently, in the context of a sentencing hearing, the Court of Appeals addressed the scope of appellate review under Rule 8-131(c) in *Bryant v. State*, *supra*, 436 Md. 653. Bryant had been sentenced, as a repeat offender, to an enhanced sentence for distribution of cocaine and conspiracy to distribute cocaine. *Id.* at 656-57. On appeal, he claimed that the State had failed to prove that he had been the person who had committed two predicate offenses because there were discrepancies in dates of birth and SID numbers[12] in the evidence introduced by the State. *Id.* at 672-73. Although Bryant had not raised this claim during the sentencing hearing, he contended that he was entitled to review under Rule 8-131(c). The Court of Appeals rejected that contention, declaring that "Rule 8-131(c) neither expressly nor implicitly provides an exception to our general preservation rules or the contemporaneous objection rule." *Id.* at 669.

We draw the following conclusions: From its origins up to the present day, it appears that the purpose of Rule 8-131(c), as applied to appellate review of verdicts rendered in criminal cases tried without a jury, always has been to allow review of

---

[12] "SID number" stands for State Identification number. In *State v. Dett*, 391 Md. 81 (2006), the Court of Appeals explained how a SID is used:

> A SID (State Identification) number is a unique number directly linked to an individual's fingerprints. Because of that link, no two persons should have the same SID number; nor, if the proper procedures are followed, should a person ever have more than one SID number.

*Id.* at 85 (footnote omitted).

11

sufficiency of the evidence without requiring either an objection or a motion for judgment of acquittal below. *Ennis*, 306 Md. at 596; *Duppins v. State*, 17 Md. App. 464, 466-67 (1973). The Court of Appeals strongly suggested in *Bryant*, however, that it would reject attempts to expand the scope of review under Rule 8-131(c) beyond its historical role. *Bryant*, 436 Md. at 669. We shall take this suggestion and hold that the contemporaneous objection rule applies to a claim that a trial court relied upon matters not in evidence in rendering a verdict in a bench trial.[13] Because appellant made no such objection below, his claim was not preserved for our review.

## II.

Considering only the evidence that was admitted, we next determine whether it was sufficient to sustain the verdict. We apply the now-familiar standard, articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires us to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted).

Appellant contends that the evidence was insufficient to prove that he possessed any of the contraband seized from his dwelling. "'Possess' means to exercise actual or constructive dominion or control over a thing by one or more persons." Md. Code (2002,

---

[13] *Massey v. State*, 173 Md. App. 94 (2007), does not require a different conclusion. Although the opinion in that case reflects no objection by the defendant, the issue of preservation was apparently not raised. It was only in that context, then, that we addressed Massey's claim that the court had considered matters not in evidence separately from his claim of evidentiary insufficiency.

12

2012 Repl. Vol. 2017 Supp.), Criminal Law Article, § 5-101(v). Knowledge is "an element of the offenses of possession of a controlled dangerous substance and possession of controlled paraphernalia" under the Maryland Controlled Dangerous Substances Act, Title 5 of the Criminal Law Article. *Dawkins v. State*, 313 Md. 638, 639-40, 651 (1988).

Specifically, in determining whether evidence is sufficient that a defendant knowingly possessed contraband, we consider the following factors: (1) "the defendant's proximity to the drugs"; (2) "whether the drugs were in plain view of and/or accessible to the defendant"; (3) whether there were "indicia of mutual use and enjoyment of the drugs"; and (4) "whether the defendant has an ownership or possessory interest in the location where the police discovered the drugs." *State v. Gutierrez*, 446 Md. 221, 234 (2016) (citation and quotation omitted).[14]

The evidence was that the following was seized from the bedroom in which appellant was located: Suboxone strips, one of which was in appellant's wallet; a baggie containing cocaine; a baggie containing a white powder residue; 18 baggies containing heroin; a bag containing marijuana which was in plain view on a futon; two digital scales containing white powder residue; and measuring cups and baking soda, some of which was in plain view.

---

[14] These factors sometimes are called the *Folk* factors, after the decision in our Court by Judge Moylan, *Folk v. State*, 11 Md. App. 508, 518 (1971), which first articulated them. Although *Folk* was decided prior to *Dawkins*, those factors are entirely consistent with *Dawkins* and are still applied today. The key point is whether we may infer, from all the circumstances, that an accused knowingly possessed the contraband at issue.

There is ample evidence of appellant's proximity to all the contraband. Much of it was found underneath his bed, and all of it was found in his bedroom. One of the Suboxone strips was found in his wallet, along with cash, which he admitted to possessing. All the contraband was either in plain view or accessible to appellant.[15] That there was no testimony establishing precisely where the scales were found is of no moment; it is enough that there was evidence that they were found in appellant's bedroom, since, under the circumstances (that is, that other related contraband, used to manufacture crack cocaine, was found in plain view), the fact finder could infer that the scales belonged to appellant. The third factor is not particularly relevant here; we note only that its absence cannot be dispositive, or else a defendant could never be found to possess drugs that he was not consuming. Finally, there is evidence of the fourth factor, namely, the envelope addressed to appellant at the residence where the contraband was found.[16]

We conclude that the evidence was sufficient to sustain the convictions of all the possessory offenses.[17]

---

[15] Given that possession may be joint, *Gutierrez*, 446 Md. at 234 n.15, it is immaterial, for purposes of sufficiency, that appellant shared the bedroom with the juvenile girl. The fact finder was entitled to infer that appellant possessed the contraband either exclusively or jointly.

[16] In any event, appellant has never contended that he did not live at the address where the search warrant was executed.

[17] In passing, we observe that appellant's reliance on *Moye v. State*, 369 Md. 2 (2002), and *Taylor v. State*, 346 Md. 452 (1997), is misplaced. In *Moye*, no drugs or other contraband were found on the defendant's person, and there was no evidence to

(continued)

**JUDGMENTS OF THE CIRCUIT COURT FOR CECIL COUNTY AFFIRMED. COSTS ASSESSED TO APPELLANT.**

---

 (continued)

establish that he "had any ownership or possessory right to or in" the dwelling where the contraband was found. *Id.* at 18. In contrast, in the instant case, a Suboxone strip was found in appellant's wallet, which, although not on his person at the time it was recovered, clearly is an item that the fact finder could infer was in his exclusive possession, especially given appellant's admission that he possessed the cash found in the same wallet; and, moreover, there was evidence that appellant had a possessory interest in the premises. Likewise, in *Taylor*, the evidence "established only that Taylor was present in a room where marijuana had been smoked recently, that he was aware that it had been smoked, and that Taylor was in proximity to contraband that was concealed in a container belonging to another." *Taylor*, 346 Md. at 459. *Taylor* is not at all similar to this case.